[No. 37169-0-I.   Division One.   July 21, 1997.]

EDWARD W. DUTTON, ET AL., *Appellants*, v. WASHINGTON PHYSICIANS HEALTH PROGRAM, ET AL., *Respondents*.

*Peter Moote* and *Peter Moote & Associates*, for appellants.

*Michael S. Rogers* and *Reed McClure*; and *Christine O. Gregoire, Attorney General,* and *Rene D. Tomisser, Assistant,* for respondents.

Cox, J. — Dr. Edward Dutton brought this action for damages against the state Medical Disciplinary Board (the Board), Washington Physicians Health Program (the Program), various individuals affiliated with these two entities, and the State and one of its agencies. This action is based on suspension of Dr. Dutton's medical license. The Board based the suspension on claims that Dr. Dutton was impaired and thus unable to perform his duties as a physician. The trial court granted motions for summary judgment to all the moving parties. Because there were no genuine issues of material fact and the moving parties were all immune from suit as a matter of law, we affirm.

In October 1991, the Program received a complaint from a former employee of Dr. Dutton's. The complainant reported that Dr. Dutton was drinking at work. Richard Bird, a Program employee, spoke to the complainant, another former employee of Dr. Dutton's, and one of his patients to investigate. They corroborated the complaint.

Bird then contacted Dr. Sanders, chief of staff at Whid-

bey General Hospital. They arranged for an intervention for Dr. Dutton in late October. As a result of that intervention, Dr. Dutton agreed to accompany Bird to treatment.

The treatment program lasted approximately one month. During that time, Dr. Dutton submitted to psychological and neuropsychological testing by physicians and others at Valley General Hospital's drug and alcohol treatment program. A neuropsychological test report prepared by the treating professionals stated that Dr. Dutton appeared to have deficits in various mental and intellectual capacities. The report also stated that Dr. Dutton's practice should be limited to routine primary care, diagnosis, and treatment. Finally, it also stated that Dr. Dutton should be reevaluated in six to nine months.

Following Dr. Dutton's release from treatment, Bird contacted him to set up an appointment to discuss follow-up treatment and monitoring. Dr. Dutton missed the first scheduled appointment. He attended the next one, but refused to sign a contract regarding treatment and monitoring.

Based on the tests performed during treatment, the Program wrote a letter to the Board expressing concern regarding Dr. Dutton's cognitive processing abilities and his refusal to participate in posttreatment monitoring and meetings. In January 1992, the Board filed a Statement of Charges and Notice and Order of Summary Suspension against Dr. Dutton.

In July 1992, Dr. Dutton entered into a Stipulation and Agreed Order with the Board in which he waived the opportunity for a hearing on the Statement of Charges and Order of Summary Suspension. The stipulation also stayed the suspension of Dr. Dutton's license, subject to conditions.

In January 1993, the Board received another complaint regarding Dr. Dutton's alcohol use. The Board suspended his license for a second time. In February 1993, Dr. Dutton entered into a Stipulation and Agreed Order regarding violations of his earlier stipulation. In July 1993, Dr.

Dutton petitioned the Board for reinstatement of his license. The Board granted the reinstatement, subject to conditions.

In January 1994, Dr. Dutton commenced this action against the Program and several of its employees, the State, the Department of Health, and the Board and several of its employees. He sought damages and other relief based on allegations of defamation, violation of his civil rights, conspiracy, interference with a contractual or economic expectancy, negligence, emotional distress, and outrage.

All defendants moved for summary judgment. The court granted the motions on the bases of statutory and quasi-judicial immunity. Dr. Dutton appeals.

I

Immunity of the Board

The trial court concluded that the Board and those associated with it have immunity on two bases. First, it determined that RCW 18.130.300 provides statutory immunity. Second, it concluded that the Board has common-law quasi-judicial immunity.

██ On appeal, Dr. Dutton challenges the first basis, but not the second. Because he presents no argument with respect to common-law quasi-judicial immunity of the Board, we will not disturb the trial court's summary dismissal of the Board on that basis.[1] Because we leave this part of the trial court's decision undisturbed, we do not reach Dr. Dutton's argument that RCW 18.130.300 applies only to individual Board members and not the Board itself.

Dr. Dutton states in his brief that "[the statutory immunity of RCW 18.130.300] only speaks to individuals, not entities." We take that as a concession that the individual Board members have absolute immunity under RCW 18.130.300. In any event, he makes no argument that the

---

[1]*See Taggart v. State*, 118 Wn.2d 195, 203-04, 822 P.2d 243 (1992).

members of the Board are not entitled to immunity under this statute. Because of the concession of law and the lack of argument on this point, we do not disturb the trial court's order dismissing individual Board members.[2]

■ Because we conclude that the Board is absolutely immune, we do not reach its argument that Dr. Dutton waived his right to a hearing and his right to allege that the Board acted on insufficient evidence following the suspension of his license.

## II

### Immunity of Governmental Entities

■ We also conclude that the trial court properly dismissed the Department of Health and the State. Dr. Dutton has alleged no independent acts or omissions by the Department or the State. Thus, there is no basis aside from the doctrine of respondeat superior for any liability on the part of those entities. Even assuming a respondeat superior relationship between those entities and the Board, quasi-judicial immunity extends from the Board to the two entities.[3]

Because we hold that the Board has absolute immunity, we need not consider Dr. Dutton's argument that the Board's actions constitute violations of his due process rights, the Administrative Procedure Act,[4] and the Board's governing statute.[5]

We hold that the trial court did not err by granting

---

[2]*See State v. Knighten*, 109 Wn.2d 896, 902-03, 748 P.2d 1118 (1988).

[3]*See Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 126-27, 829 P.2d 746 (1992) (citing *Creelman v. Svenning*, 67 Wn.2d 882, 885, 410 P.2d 606 (1966)), *cert. denied*, 506 U.S. 1079 (1993); *Savage v. State*, 127 Wn.2d 434, 442, 899 P.2d 1270 (1995) (policy justifies extension of quasi-judicial immunity from an agent to the State).

[4]RCW 34.05.

[5]*See Taggart*, 118 Wn.2d at 203.

summary judgment in favor of the Department and the State.

## III
### Qualified Immunity of the Program

Dr. Dutton first argues that statutory immunity for the Program under RCW 18.130.175(7) does not apply where the Board has not made a referral to the Program under RCW 18.130.175(1). RCW 18.130.175(7) provides that

A person who, in good faith, reports information or takes action in connection with this section is immune from civil liability for reporting information or taking the action.

(a) The immunity from civil liability provided by this section shall be liberally construed to accomplish the purposes of this section and the persons entitled to immunity shall include:

(i) An approved monitoring treatment program;

. . . .

(iii) Members, employees, or agents of the program or association;

The Program correctly responds that the immunity is not confined to that provision. Rather, immunity also applies to Program actions under RCW 18.130.175(2) and (3).

RCW 18.130.175(3) requires substance abuse programs to report to the disciplinary authority "any license holder who fails to comply with the requirements of this section or the program or who, in the opinion of the program, is unable to practice with reasonable skill or safety." This provision applies to Dr. Dutton's situation. The Program is entitled to rely on this provision for immunity.

Dr. Dutton contends that he was not participating in a voluntary monitoring program and did not sign a waiver permitting the program to release information to

the Board as set forth in RCW 18.130.175(2) and (3). But under RCW 18.130.175(3), neither Dr. Dutton's voluntary participation in a monitoring program nor his written waiver was required for the Program to perform its duty to report him to the Board under the circumstances of this case. In view of the Legislature's explicit directive in the statute that the act be liberally construed to serve the purposes of the section providing immunity, we conclude that Dr. Dutton's argument is unpersuasive.

Dr. Dutton next argues that there are genuine issues of material fact respecting whether the Program and its employees acted in good faith so as to qualify for statutory immunity under RCW 18.130.175(7). Thus, he urges that summary judgment was improper. We disagree.

■ The party who moves for summary judgment has the initial burden of showing there is no genuine issue of material fact.[6] Once the party meets that burden, the burden shifts to the nonmoving party to show otherwise.[7]

■ "Good faith" is not defined in RCW 18.130.175(7). However, in *Dunning v. Paccerelli*,[8] the court described the good faith requirement in the context of a DSHS caseworker's duty to investigate and report child abuse. The court stated that to establish good faith, a party must have acted with "reasonable good faith intent, judged in light of all the circumstances then present."[9]

Here, the Declaration of Richard Bird states in part that his motivation was to have Dr. Dutton evaluated and treated if necessary. Bird also states that he sought to protect the public from a potentially impaired physician. Our reading of the evidence that describes the interac-

---

[6]*Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992).

[7]*Hiatt*, 120 Wn.2d at 66.

[8]63 Wn. App. 232, 818 P.2d 34 (1991), *review denied*, 118 Wn.2d 1024 (1992).

[9]*Dunning*, 63 Wn. App. at 240. *See also* BLACK'S LAW DICTIONARY 693 (6th ed. 1990) ("In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.").

tions between Dr. Dutton and Bird is that the latter's actions were consistent with his stated purposes. Bird investigated to determine whether there was reason to believe that the complaint of impairment was true. He arranged for and participated in an intervention, a standard practice to deal with impaired persons. He also monitored Dr. Dutton's treatment by professionals. These all were proper actions taken in view of the statutory obligation of the Program to investigate and act on reports of potentially impaired physicians. In short, the Program fulfilled its burden to show the absence of any genuine issue of material fact when it made the motion for summary judgment. The burden shifted to Dr. Dutton to show otherwise.

Dr. Dutton's written submissions do nothing to specify in what respect there is any genuine issue of material fact as to the good faith of Bird, the Program, or any other person associated with the Program. He merely asserts that good faith is a factual matter and therefore summary judgment on that issue is improper. He is wrong.

■■ Simply because good faith is usually a question of fact does not mean that we may not resolve it on summary judgment. In *Spurrell v. Bloch*,[10] this court acknowledged that the question of whether certain conduct was egregious enough to constitute outrage is ordinarily a question for the trier of fact. But this issue was properly resolved on summary judgment where no reasonable minds could differ that the disputed conduct was not outrageous.

Applying this principle here, we conclude that reasonable minds could not differ as to the Program's good faith. It followed its obligation to investigate, conduct an intervention with, and monitor an impaired physician. Dr. Dutton has failed to point to anything in the record to demonstrate a lack of good faith.

It is particularly important that good faith (or its

---

[10]40 Wn. App. 854, 862-63, 701 P.2d 529 (also affirming summary judgment where good faith was at issue), *review denied*, 104 Wn.2d 1014 (1985).

absence) in this qualified immunity situation be determined promptly. As our Supreme Court observed in *Robinson v. City of Seattle*,[11] a prompt determination is vital because qualified immunity is not simply a defense to liability but a protection from suit. The Program is entitled to such protection here.

At oral argument, Dr. Dutton argued that alleged misrepresentations by the Program respecting its relationship to the Board showed a lack of good faith. We reject this argument. Even if there were representations about the Program's (as opposed to the Board's) ability to terminate the doctor's license, that does not constitute a lack of good faith. In substance, a recommendation by the Program to the Board was, in fact, the basis for the Board to make its independent determination that Dr. Dutton's license should be suspended. This does not constitute either a material misrepresentation or a lack of good faith. It cannot be a basis to deny immunity to the Program and its employees.

Dr. Dutton also suggests that certain tests administered to Dr. Dutton by persons other than the Program were negligently interpreted. We see no relationship between the Program and the other persons that would be the basis for denying immunity to the Program. There is no evidence in the record before us showing that these other persons were associated with the Program in any way.

In view of the circumstances described in the evidence that was before the court at the time of the motion, reasonable minds could not differ that the Program and its employees acted in good faith. Therefore, there was no genuine issue of material fact to preclude summary judgment.

We affirm the summary judgment orders.

---

[11] 119 Wn.2d 34, 65, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992).

BAKER, C.J., and BECKER, J., concur.