[No. 41288-4-I.    Division One.    March 29, 1999.]

PETER MARTHALLER, *as Personal Representative,*
*Appellant,* v. KING COUNTY HOSPITAL DISTRICT NO. 2, ET
AL., *Respondents.*

*D. Bernard Zaleha*, for appellant.
*Lee M. Barns* of *McIntyre & Barns*, for respondents.

WEBSTER, J. — Peter Marthaller (Marthaller), as personal representative of Stephen Marthaller (Stephen), alleges that paramedics employed by King County Hospital District No. 2 (Hospital) negligently performed an endotracheal intubation while rendering emergency medical services to Stephen, a recipient of multiple gunshot wounds to the chest. Marthaller alleges that the paramedics' negligence resulted in Stephen's brain damage and death. The trial court granted summary judgment in favor of the Hospital. Marthaller's appeal presents the following issues: (1) has the Hospital carried its burden on summary judgment to establish that the paramedics are entitled to immunity under RCW 18.71.210; (2) may the coroner who performed the autopsy on Stephen's body provide expert testimony on the standard of care for emergency medical personnel performing an endotracheal intubation and breach of that standard of care; and (3) was the corner's affidavit contradictory to his deposition so as to preclude the affidavit from creating a genuine issue of fact? We affirm summary judgment in favor of the Hospital because the paramedics are statutorily immune under RCW 18.71.210 and on the

alternative ground that the coroner's affidavit fails to create an issue of fact. Because we affirm summary judgment on two separate grounds, we need not decide whether the coroner is qualified to provide expert testimony.

## I. BACKGROUND

Paramedics performed an endotracheal intubation on Stephen who had multiple gunshot wounds to the chest. During transport to Harborview Medical Center, Stephen's blood pressure and pulse were good and he was ventilating well. At, or close to, arrival at Harborview emergency, Stephen's blood pressure and pulse dropped precipitously. Apparently, the endotracheal tube became dislodged, and Stephen lost his airway. Emergency room personnel recognized an esophageal intubation and accomplished a reintubation of the tracheal on the second attempt. Evidence of anoxic brain injury was observed. Stephen died 15 days later. The coroner's opinion of the cause of death, as stated on the autopsy report, was "hypoxic encephalopathy and pulmonary consolidation due to complications of medical therapy (esophageal intubation, anamnestic)."

Marthaller sued and listed Michael Doberson, M.D., as his single expert witness. At the time of Stephen's death, Doberson was a Medical Examiner for King County and conducted the autopsy on Stephen's body. On June 24, 1997, the Hospital took Doberson's deposition, where he testified that: (1) at the time of the autopsy, he had performed 20 to 30 intubations; (2) he had not performed an intubation since medical school (he graduated from medical school in 1989); (3) the report that Stephen was stable en route, with normal blood pressure and pulse and ventilating well, would indicate that the tube was properly placed and functioning as intended; (4) stable conditions en route to the hospital could mean that the tube was at least partially placed and does not necessarily indicate that the tube was properly placed; (5) shifting of the tube due to jostling of the patient during transport would suggest that the tube was not placed all the way down to prevent its be-

ing shifted; (6) it is not common for someone to arrive at the emergency room with an endotracheal tube placed in the esophagus; (7) he would not, at trial, be offering any opinions on the standard of care for a paramedic; (8) intubation at the scene or in a moving ambulance, or where the patient is moving, would be a difficult intubation; (9) it would be possible to fail to get the tube all the way down and not realize it; (10) he was unsure whether he is qualified to say anything about standard of care under emergency conditions; (11) the fact that it took two attempts to successfully reintubate in the emergency room is an indication that this was a difficult intubation; (12) he was not going to testify, and it is not his opinion, that the tube ended up in the esophagus as a result of the paramedics failing to meet the appropriate standard of care for a paramedic in the state of Washington. Doberson also testified that:

> [A]s a physician and as a forensic pathologist doing an examination and investigation to come to a determination as to the cause and manner of death, in this case I would say that I could offer an expert opinion, in that the proper place for an endotracheal tube is the trachea, not the esophagus.

The Hospital moved for summary judgment. In support of its motion, the Hospital set forth the declaration of Richard Cummins, M.D. Cummins is board certified in emergency medicine and internal medicine, is a professor at the University of Washington and the Associate Director of the Emergency Department there, has published books and articles on emergency medicine and advance cardiopulmonary resuscitation, and is the Associate Medical Director for King County Medic One. He supervises, educates, and trains paramedics. Cummins' opinions are that: (1) the paramedics successfully performed and properly verified the endotracheal intubation; (2) the paramedics continued to properly evaluate Stephen's status until he was turned over to Harborview emergency personnel; and (3) nothing the paramedics did or failed to do contributed to Stephen's death.

In opposition to the motion for summary judgment, Mar-

thaller set forth Doberson's affidavit. Doberson's affidavit was signed six days after his deposition. Doberson is board certified in anatomic, clinical, and forensic pathology. Doberson testified that: (1) he is "familiar with the standard of care expected of health care practitioners when performing endotracheal intubation"; (2) he was educated in the standard procedures of endotracheal intubation and is required to use that knowledge in his practice as a medical examiner; and (3) his opinion, based on his examination of Stephen, is that "the process by which Mr. Marthaller was intubated failed to meet the appropriate standard of care for endotracheal intubation." Doberson also testified that:

> It is my further opinion that Mr. Marthaller's death arose as a direct complication of the improper intubation. Specifically, Mr. Marthaller was denied oxygen at some point during his transport to Harborview Medical Center. Medical records indicate that the endotracheal tube was present in his esophagus on presentation at Harborview Medical Center. Even if the tube was initially inserted into Mr. Marthaller's lungs rather than his esophagus, the tube was not inserted correctly nor deeply enough to prevent the tube from dislodging during the necessary jostling of a patient in an ambulance.

## II. ANALYSIS

### A. Standard of Review

"When reviewing an order for summary judgment, we engage in the same inquiry as the trial court, and will affirm summary judgment if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Wilson Court Ltd. Partnership v. Toni Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998); *see also* CR 56(c). All facts and reasonable inferences must be considered in a light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *See Wilson Court.*

### B. The Paramedics Are Statutorily Immune From Liability

RCW 18.71.210 provides paramedics with qualified

immunity from liability for their acts or omissions in rendering emergency medical services. Qualified immunity is immunity from suit, not simply from liability. *See Wilson v. State*, 84 Wn. App. 332, 349, 929 P.2d 448 (1996), *review denied*, 131 Wn.2d 1022, 937 P.2d 1103, *cert. denied*, 522 U.S. 949, 118 S. Ct. 368, 139 L. Ed. 2d 286 (1997). Its purpose is to protect an individual government employee from "the unduly inhibiting effect the fear of personal liability would have on the performance of his or her professional obligations." *Savage v. State*, 127 Wn.2d 434, 441-42, 899 P.2d 1270 (1995). Under the statute, paramedics are immune from liability for simple negligence as long as they act in good faith. *See* RCW 18.71.210. They are not immune from liability for acts or omissions which constitute gross negligence or willful or wanton misconduct. *See id*. Good faith is not defined in the statute.

Although good faith is usually a question of fact, it may be resolved on summary judgment where no reasonable minds could differ on the question. *See Dutton v. Washington Physicians Health Program*, 87 Wn. App. 614, 622, 943 P.2d 298 (1997). In *Dutton*, the plaintiff's medical license was suspended based on claims that he was impaired due to substance abuse and unable to perform his duties as a physician. *See id.* at 616. The plaintiff brought various tort claims, including defamation, against a treatment program in which he participated. *See id.* The defendant claimed qualified immunity under RCW 18.130.175(7) that grants immunity to a person who, in good faith, reports information concerning substance abuse by health professionals. *See Dutton*, 87 Wn. App. at 621. The defendant put forth evidence of good faith and the plaintiff failed to point to anything in the record to demonstrate a lack of good faith. *See id.* at 622. Concluding that reasonable minds could not differ concerning the defendant's good faith, this court affirmed summary judgment. *See id.*

In *Whaley v. State*, 90 Wn. App. 658, 663, 956 P.2d 1100 (1998), the plaintiff-mother sought damages from a child care provider arising out of a report of child abuse. The de-

fendant claimed immunity under a statutory provision providing immunity from liability to any person participating in good faith in making a report of child abuse. *See id.* at 667. The trial court granted summary judgment on this ground. *See id.* This court framed the issue as whether the child care provider, who has the burden of proving good faith, met that burden on summary judgment as a matter of law. *See id.* at 668. Finding that the child care provider made a prima facie showing of good faith in her declaration and that there was nothing in the record that suggested that the provider acted with improper purpose, this court determined that a reasonable jury would necessarily conclude that the report was made in good faith and affirmed summary judgment. *See id.* at 668-69.

But in another case involving statutory immunity from liability for reporting child abuse, this court affirmed summary judgment where the defendant set forth no evidence showing good faith because no evidence in the record suggested that the defendant did *not* act in good faith. *See Lesley v. Department of Soc. & Health Servs.*, 83 Wn. App. 263, 281, 921 P.2d 1066 (1996), *review denied*, 131 Wn.2d 1026, 939 P.2d 216 (1997).

In the present case, although the determination of good faith under RCW 18.71.210 presents a question of fact, we find that reasonable minds could not differ on the question here because there is absolutely no evidence in the record to suggest that the paramedics acted without good faith. We affirm summary judgment in favor of the Hospital finding that the paramedics are statutorily immune under RCW 18.71.210.

C. The Coroner's Affidavit Does Not Create an Issue of Fact

█ To survive a defendant's motion for summary judgment in a medical malpractice claim, a plaintiff normally must establish with expert medical testimony the appropriate standard of care and specific facts concerning a breach of that standard. *See Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993); *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 171, 810 P.2d 4 (1991).

■ " 'When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.' " *Klontz v. Puget Sound Power & Light,* 90 Wn. App. 186, 192, 951 P.2d 280 (1998) (quoting *Marshall v. AC&S, Inc.,* 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (per curiam)[1]). In *Klontz,* where the plaintiff sued for breach of implied contract after being terminated from employment, the plaintiff admitted in his deposition that he did not read in detail before termination a policy guide but later claimed in his affidavit that he relied on the policy guide. *See id.* at 192.

In *Marshall,* where the plaintiff alleged personal injury as a result of asbestos exposure, the trial court granted summary judgment in favor of the defendants on the grounds that the statute of limitations had expired. 56 Wn. App. at 183. The plaintiff submitted an affidavit stating the date that he first learned of his illness, but the affidavit was contradicted by hospital records reflecting an earlier date of diagnosis. *See id.* at 185. The court found that the plaintiff's affidavit did not give rise to a genuine issue of fact. *See id.*

In the present case, Doberson states in his deposition that: (1) he would not offer opinions on the standard of care applicable to *paramedics*; and (2) he would not testify that it is his opinion that the tube ended up in the esophagus as a result of the paramedics failing to meet the appropriate standard of care for a *paramedic* in the state of Washington. In his declaration, on the other hand, Doberson states: (1) that he is "familiar with the standard of care expected of *health care practitioners* when performing endotracheal intubation"; and (2) that he is of the opinion that the intubation "failed to meet the *appropriate* stan-

---

[1]*Marshall* quoted *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir. 1984).

dard of care for endotracheal intubation." (Emphasis added.)

As an alternative basis for affirming summary judgment in favor of the Hospital, we find that Doberson's affidavit is contradictory to his deposition testimony and, under *Marshall*, fails to create a genuine issue of fact. His deposition fails to raise an issue of fact because he does not testify that in his opinion the paramedics failed to meet the applicable standard of care for paramedics and unambiguously states that he will not testify to that effect. And his affidavit fails to create an issue of fact because a paramedic is a health care practitioner, and thus, his affidavit effectively contradicts his deposition testimony regarding the applicable standard of care and whether the paramedics in this case breached that standard.

### III. CONCLUSION

Because we find that the paramedics in this case were immune from suit under RCW 18.71.210, we affirm summary judgment in favor of the Hospital. As an alternative basis for affirming the trial court, we find that the coroner's affidavit failed to raise any genuine issue of material fact.

KENNEDY, C.J., and BECKER, J., concur.