96 P.3d 413 (2004)
Paul DESCHAMPS, Appellant,
v.
MASON COUNTY SHERIFF'S OFFICE, a public agency; Jan Alvord, individually and in her official capacity; Howard Armfield, individually and in his official capacity; Steve Wybark, individually and in his official capacity, Respondents.
No. 30432-5-II.
Court of Appeals of Washington, Division 2.
July 20, 2004.
Publication Ordered August 17, 2004.
*414 Thomas C. Duffy, Vancouver, Monty Dale Cobb, Shelton, Guy M. Bogdanovich, Law Lyman Daniel Kamerrer, Olympia, Dennis Hunter, Vancouver, for Respondents.
Selmer Alton Davidson, Shelton, for Appellant.
VAN DEREN, J.
Paul Deschamps appeals the summary judgment dismissing his claims against the Mason County Sheriff's Office (MCSO) and its employees for temporarily denying him the right to possess a firearm. He also challenges the trial court's denial of his motions to amend his complaint and strike evidence. Because Deschamps failed to produce evidence that raised a genuine issue of material fact to overcome statutory immunity *415 under RCW 9.41.0975, and his amended complaint was futile, we affirm.

FACTS
Deschamps made a down payment on a pistol at Central Sporting Goods in November 2000, but indicated that he would pick up the pistol at a later date. At the time, Deschamps had a concealed pistol license (CPL) from Mason and Kitsap counties.
On or about December 9, 2000, Deschamps returned to Central Sporting Goods to pick up the pistol; however, a copy of his Application to Transfer Pistol had been marked "denied." Clerk's Papers (CP) at 78. Deschamps' declaration in response to MCSO's summary judgment motion states that a store employee informed him that MCSO[1] had denied the application.
Jan Alvord is employed as a clerk with MCSO and her duties include processing applications and maintaining files for concealed pistol licenses issued by MCSO. Alvord stated in her amended declaration in support of summary judgment that the first notice MCSO received about Deschamps' firearm application was a one page handwritten letter with a copy of the application with "DENIED" written across it from Central Sporting Goods around December 11, 2000. CP at 109. Alvord also received a telephone call on or near that day from a Central Sporting Goods employee inquiring if MCSO could help determine why Deschamps' application was denied when he appeared to have a valid Kitsap County CPL.
In response to these requests and because the firearm application listed Deschamps as a Mason County resident, Alvord took numerous steps to ascertain Deschamps' criminal history and to determine his eligibility for purchase of a firearm.
Alvord ran an ACCESS record check and also a "Spillman" check that is accessible only to MCSO employees. CP at 109. The ACCESS check documented a 1982 felony theft conviction, and the Spillman records indicated a 1996 4th Degree Assault domestic violence offense. Alvord obtained a copy of Deschamps' Mason County CPL. Alvord also contacted Kitsap County. The county was not aware of Deschamps' assault conviction.
Alvord then contacted the Mason County prosecuting attorney's office to learn more about the assault conviction. The prosecutor's office noted that Deschamps' file indicated a domestic violence incident, but that the conviction did not designate domestic violence.
Deschamps' CPL file included a letter from the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF). The ATF letter stated that federal law did not prohibit Deschamps from possessing firearms, but it cautioned him that the letter did not relieve him of any state law requirements. To clarify the letter's authenticity and effect on state law, Alvord contacted the ATF. Over two months later, the ATF responded that they had no such letter or record on file. Alvord discussed the ATF letter and her efforts with her supervisor, MCSO's chief civil deputy. In May 2001, he wrote Deschamps that state law had changed, making his CPL invalid because Deschamps did not have a Certificate of Rehabilitation regarding his felony theft conviction.
Alvord sought additional advice from the Kitsap County deputy prosecutor who oversaw the renewal of Deschamps' CPL. The deputy prosecutor informed Alvord that Deschamps could own firearms through a loophole in state law. The Kitsap County prosecutor faxed this information to Alvord, but he instructed her to seek additional advice from the Mason County prosecutor's office. Alvord followed his instructions, but the Mason County prosecutor's office informed her that their backlog created a six month delay for a response.
Alvord also contacted Dan Cronin, an ATF attorney. Cronin informed Alvord that MCSO's May 2001 letter to Deschamps was incorrect. He asked Alvord about any additional research and she informed him about the assault conviction. He later informed her that an assault conviction against a current or former spouse could disqualify a person from firearm ownership. He faxed an *416 ATF press release on this subject. In July 2001, MCSO received a letter from Deschamps about another letter from the ATF that he had recently received. This ATF letter stated that Deschamps could not own a firearm under federal law because of the assault conviction on his former spouse. Deschamps' letter threatened to sue the chief civil deputy and alleged that MCSO had committed forgery and fraud.
In late August 2001, Cronin, who by then had examined court documents and jury instructions from Deschamps' attorney relating to the 1996 assault conviction, confirmed that Deschamps' assault conviction was not against his former spouse. The disposition report indicated a conviction of fourth degree assault for "Count(s) 2," which appeared to be a conviction for assaulting both Deschamps' former spouse and another person. CP at 116. But the information Cronin had examined indicated that Deschamps' conviction actually involved a lesser included crime, fourth degree assault, against the other non-related person.
Alvord promptly contacted MCSO staff and a few weeks later Alvord received a different firearm application for Deschamps. MCSO approved this application.
In July 2002, Deschamps, acting pro se, filed a civil complaint against MCSO, alleging that MCSO denied his firearm application in bad faith and violated his constitutional rights under 42 U.S.C. § 1983. MCSO filed an answer and later moved for summary judgment. With counsel, Deschamps filed a motion in opposition to summary judgment and later moved to amend his complaint and strike the exhibits attached to Alvord's declaration.
The trial court heard the motions in May 2002. It dismissed Deschamps' complaint and held that MCSO was statutorily immune under RCW 9.41.0975. Finding that Deschamps failed to demonstrate a genuine issue of material fact regarding MCSO's alleged lack of good faith in determining his eligibility to own a firearm and the court granted summary judgment to MCSO. Reasoning that Deschamps' proposed amendments were futile, the trial court also denied the motion to amend his complaint.[2]

ANALYSIS

I. SUMMARY JUDGMENT AND GOOD FAITH IMMUNITY
Deschamps asserts that summary judgment is precluded because circumstantial evidence raises genuine issues of material fact that MCSO's actions lacked good faith. MCSO responds that all of their actions in assisting with Deschamps' firearm application were done in good faith.

A. Standard of Review
The trial court should grant summary judgment if it determines, after viewing the entire record and drawing all reasonable inferences in favor of the nonmoving party, that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Retired Pub. Employees Council of Wash. v. Charles, 148 Wash.2d 602, 612, 62 P.3d 470 (2003). The initial burden of demonstrating the absence of material facts rests with the moving party; the burden then shifts to the nonmoving party to come forward with a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Young v. Key Pharm., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmoving party's rebuttal must involve specific facts, not speculative or conclusory statements. CR 56(e); Charles, 148 Wash.2d at 612, 62 P.3d 470. We review a summary judgment order de novo, from the same position as the trial court. Charles, 148 Wash.2d at 612, 62 P.3d 470.

B. RCW 9.41.0975
RCW 9.41.0975 provides qualified immunity for employees who prepare and issue or deny firearm licenses in good faith. This statute also grants the right to apply for a writ of mandamus to those feeling wrongly deprived of their rights under the statute, a *417 remedy Deschamps did not pursue. RCW 9.41.0975(2). Although this statutory remedy could have provided a quick and efficient resolution to this dispute, we do not consider its application here because neither party has raised the issue of mandamus relief. Instead the parties focus on the interplay of good faith and immunity under RCW 9.41.0975. Consequently, we turn to the issues raised.
Qualified immunity shields individuals and entities from potential lawsuits, "not simply from liability." Marthaller v. King County Hosp. Dist. No. 2, 94 Wash.App. 911, 916, 973 P.2d 1098 (1999). Accordingly, the purpose of statutory immunity is to allow an eligible person to perform professional responsibilities without the fear of potential lawsuits or personal liability. Marthaller, 94 Wash.App. at 916, 973 P.2d 1098.
RCW 9.41.0975 states in pertinent part:
(1) The state, local governmental entities, any public or private agency, and the employees of any state or local governmental entity or public or private agency, acting in good faith, are immune from liability
....
(f) For errors in preparing or transmitting information as part of determining a person's eligibility to receive or possess a firearm, or eligibility for a concealed pistol license.
(emphasis added).[3]
Case law has not interpreted RCW 9.41.0975; however, statutory immunity involving good faith is not unique. See., e.g., RCW 18.71.210; RCW 26.44.060(1); former RCW 4.24.510 (1999).[4] "The standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose." Whaley v. State Dep't. of Soc. & Health Serv., 90 Wash.App. 658, 669, 956 P.2d 1100 (1998) (citing Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385, 715 P.2d 1133 (1986)); see also Yuille v. State Dep't. of Soc. & Health Serv., 111 Wash.App. 527, 533, 45 P.3d 1107 (2002) review denied, 148 Wash.2d 1003, 60 P.3d 1212 (2003) (following Whaley's definition of good faith).[5] We examine good faith by considering all the relevant circumstances. Whaley, 90 Wash. App. at 669, 956 P.2d 1100. Further, "a traditional negligence standardbased on what the [employee or entity] reasonably should have knownis not used to determine whether immunity will attach." Whaley, 90 Wash.App. at 668-69, 956 P.2d 1100. And "[a]lthough good faith is usually a question of fact, it may be resolved on summary judgment where no reasonable minds could differ on the question." Marthaller, 94 Wash.App. at 916, 973 P.2d 1098.

C. Deschamps' Firearm Application
Here, we must determine whether there are genuine issues of fact that MCSO and its employees failed to act in good faith as defined under RCW 9.41.0975. In the light most favorable to Deschamps, we evaluate good faith by examining if MCSO employees acted with honesty and lawfulness of purpose in light of all of the circumstances.[6]
*418 Nothing in the record demonstrates that MCSO acted with dishonesty or unlawfulness of purpose in attempting to resolve Deschamps' denied firearm application. The record reflects that between December 11, 2000, and September 2001, Alvord used phone calls, letters, fax transmissions, contacts with Deschamps, court information, ATF information and advice, and numerous computer databases in an effort to help clarify Deschamps' eligibility to own a firearm. Alvord actively followed up with all relevant staff, and although various sources provided conflicting information to her, which caused delay, RCW 9.41.0975(f) expressly shields MCSO staff from "errors in preparing or transmitting information as part of determining a person's eligibility to receive or possess a firearm." When Alvord clearly determined Deschamps' eligibility to own a firearm, she quickly communicated his status to the appropriate MCSO staff.
Deschamps ignored the plain language of the immunity statute, RCW 9.41.0975, and, instead of proffering evidence to rebut MCSO's good faith efforts, he repeatedly complained that the agency's employees failed to perform their professional responsibilities.[7]See, e.g., Br. of Appellant at 15 ("The failure of MCSO to fulfill the obligations of state statutes, i.e. RCW 9.41.090(2)(a) and (2)(b), could be considered de facto lack of good faith."); CP at 81 (Deschamps' Declaration in Opposition to Summary Judgment.) ("All Jan [Alvord] had to do was to go upstairs and look at the court file. Jan's reliance on the `computer' as her source and authority for her representations is problematical."). Further, Deschamps' bare assertion of lack of good faith by a MCSO employee is inadmissible hearsay, speculative, and opinion evidence. ER 401; see CP at 80 (Deschamps' Declaration in Opposition to Summary Judgment.) ("On 12/14/00 [I] called Central for some further information ... [Alvord] told them that I had `lots of convictions' ... and that I had gotten the license through `fraudulent means.'"). Accordingly, such speculative evidence is highly unpersuasive in a summary judgment proceeding. Suarez v. Newquist, 70 Wash. App. 827, 832, 855 P.2d 1200 (1993).
The trial court attempted to focus its inquiry on immunity under RCW 9.41.0975, but Deschamps continued to argue how MCSO failed to do its job. The court ultimately and correctly stated that "anything as far as I can tell that was done by the Mason County Sheriff's Office was done in a good faith effort to verify whether or not Mr. Deschamps could in fact lawfully buy this or any other pistol." Report of Proceedings (RP) at 33.
Deschamps' additional arguments are also unpersuasive. He argues that summary judgment was improper because it is unclear whether MCSO actually denied his firearm application. The record strongly suggests that MCSO did not deny it, and thus no action would lie. But assuming for the sake of Deschamps' argument that they did deny or at least hold the application, RCW 9.41.0975's plain language provides immunity *419 for an erroneous denial of a firearm application done in good faith.
Deschamps next contends that the trial court failed to consider the evidence in the light most favorable to the nonmoving party. But we review summary judgments de novo, and considering the evidence in the light most favorable to Deschamps leads us to the same conclusion as the trial court.
Finally, Deschamps challenges the trial court's interpretation of the obligations imposed on MCSO under RCW 9.41.090[8]; however, the trial court did not make a definitive holding on this statute and our de novo review concludes that Deschamps failed to overcome MCSO's statutory immunity under RCW 9.41.0975. And the proper focus is this immunity statute. See Dutton v. Washington Physicians Health Program, 87 Wash. App. 614, 622-23, 943 P.2d 298 (1997) ("It is particularly important that good faith (or its absence) in this qualified immunity situation be determined promptly ... a prompt determination is vital because qualified immunity is not simply a defense to liability but a protection from suit.").
In summary, because Deschamps failed to provide evidence raising a genuine issue of fact regarding MCSO's good faith efforts to resolve his firearm application, the trial court did not err in holding that MCSO was immune under RCW 9.41.0975 and in granting summary judgment to MCSO.

II. MOTION TO AMEND COMPLAINT
Deschamps argues that the trial court abused its discretion in denying his motion to amend his complaint. He emphasizes that his original complaint did not include the proper parties or evidence, and was written pro se.
We review the trial court's denial of a motion to amend for an abuse of discretion. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 142, 937 P.2d 154 (1997). But when the pleadings have closed, the trial court may consider if an amendment is futile. Ino Ino, Inc., 132 Wash.2d at 142, 937 P.2d 154; Shelton v. Azar, Inc., 90 Wash.App. 923, 928, 954 P.2d 352 (1998).
MCSO moved for summary judgment six months after filing its answer to Deschamps' complaint. Deschamps' moved to amend his complaint about six weeks before the summary judgment hearing. The proposed amended complaint identified the proper parties and changed the cause of action from bad faith to lack of good faith. The trial court dismissed Deschamps' suit because he failed to overcome statutory immunity under RCW 9.41.0975. As the trial court correctly held, "the amended complaint is in essence a restatement of the same issues that are raised in the original complaint." RP at 35. Thus, the court did not abuse its discretion in denying Deschamps' motion to amend.

III. MOTION TO STRIKE EXHIBITS
Deschamps complains that the trial court erred in refusing to strike the "extraneous" exhibits in Alvord's declaration supporting MCSO's summary judgment motion. Br. of Appellant at 25. We review this issue for an abuse of discretion. Terrell C. v. State Dep't. of Soc. & Health Serv., 120 Wash.App. 20, 30, 84 P.3d 899 (2004).
Both Deschamps' complaint and proposed amended complaint allege that MCSO's employees lacked good faith in determining his eligibility to own a firearm. The exhibits attached to Alvord's declaration detail her *420 efforts in resolving Deschamps' eligibility. Because the exhibits are material to Deschamps' lawsuit, the court did not abuse its discretion in refusing to strike them.[9]
We affirm.
We concur: MORGAN, A.C.J., and BRIDGEWATER, J.
NOTES
[1] When appropriate, MCSO identifies all of the defendants.
[2] Deschamps does not appeal the court's dismissal of his claims under 42 U.S.C. § 1983.
[3] RCW 9.41.0975 also provides qualified immunity for: "(b) For preventing the sale or transfer of a firearm to a person who may lawfully receive or possess a firearm" and "(d) For failing to issue a concealed pistol license to a person eligible for such a license," which provisions are not at issue here.
[4] Laws of 1999, ch. 54, § 1; Laws of 2002, ch. 232, § 2.
[5] We have also defined good faith in the context of the Uniform Anatomical Gift Act (UAGA) as "`honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage'" Sattler v. Northwest Tissue Ctr., 110 Wash.App. 689, 695, 42 P.3d 440 (2002) (quoting Nicoletta v. Rochester Eye & Human Parts Bank, Inc., 136 Misc.2d 1065, 519 N.Y.S.2d 928 (1987)). Because Sattler emphasized that their good faith interpretation "promote[d] uniformity" with UAGA jurisprudence, but was "in harmony" with Whaley, we adopt Whaley's definition of good faith. 110 Wash. App. at 695, 42 P.3d 440.
[6] We decline to adopt a "reasonable" element when evaluating whether a person acts in good faith because the statutory scheme of RCW 9.41.0975 does not require it. See Dunning v. Pacerelli, 63 Wash.App. 232, 240, 818 P.2d 34 (1991) (stating that RCW 26.44.030(1) ("is framed in terms of reasonableness")); see also Marthaller v. King County Hosp. Dist. No. 2, 94 Wash.App. 911, 916-17, 973 P.2d 1098 (1999) (not examining the reasonableness of good faith under RCW 18.71.210, which does not contain a reasonable requirement). We emphasize that the absence of a reasonable element in evaluating good faith is a separate and distinct posture from our review of a summary judgment when, after determining the existence, or nonexistence, of good faith, we ask if reasonable minds could differ on the question. Marthaller, 94 Wash.App. at 916, 973 P.2d 1098. Although the lack of a reasonable element arguably invites a subjective standard of good faith, RCW 9.41.0975's statutory scheme does not have a reasonable element and the good faith's definition's "lawfulness of purpose" language mitigates this concern. Whaley v. State Dept. of Soc. And Health Serv., 90 Wash.App. 658, 669, 956 P.2d 1100 (1998). Further, the subjective/objective distinction of reasonable good faith appears to derive from 42 U.S.C. § 1983, which is distinct from the state statutory immunity here. Petcu v. State, 121 Wash.App. 36, 63, 86 P.3d 1234 (2004).
[7] RCW 9.41.090 requires MCSO to assist gun dealers with potential purchasers of firearms. For example:

(b) Once the system is established, a dealer shall use the state system and national instant criminal background check system, provided for by the Brady Handgun Violence Prevention Act (18 U.S.C. Sec. 921 et seq.), to make criminal background checks of applicants to purchase firearms. However, a chief of police or sheriff, or a designee of either, shall continue to check the department of social and health services' electronic data base and with other agencies or resources as appropriate, to determine whether applicants are ineligible under RCW 9.41.040 to possess a firearm.
RCW 9.41.090(2)(b)
[8] We note that MCSO did not seek a court order under RCW 9.41.090(4) which states:

In any case where the chief or sheriff of the local jurisdiction has reasonable grounds based on the following circumstances: ... (e) an arrest for an offense making a person ineligible under RCW 9.41.040 to possess a pistol, if the records of disposition have not yet been reported or entered sufficiently to determine eligibility to purchase a pistol, the local jurisdiction may hold the sale and delivery of the pistol beyond five days up to thirty days in order to confirm existing records in this state or elsewhere. After thirty days, the hold will be lifted unless an extension of the thirty days is approved by a local district court or municipal court for good cause shown. A dealer shall be notified of each hold placed on the sale by local law enforcement and of any application to the court for additional hold period to confirm records or confirm the identity of the applicant.
Given that MCSO did not seek such an order, we do not consider whether MCSO was entitled to one.
[9] The court did not formally rule on Deschamps' motion to strike; however, the record demonstrates that the court considered the challenged exhibits.