[No. 51316-8-I.   Division One.   February 2, 2004.]

TERRELL C., *Personally and as Guardian, Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL., *Respondents.*

---

*Jo-Hanna Gladness Read* (of *Endriss & Read, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Peter J. Helmberger, Assistant,* for respondents.

GROSSE, J. — Statutory duties and obligations imposed on social workers of the Department of Social and Health Services and Child Protective Services were enacted to prevent child abuse and preserve the integrity of the family where possible. Those duties and obligations do not extend to protect all other children with whom client children come into contact during day-to-day activities absent a recognized statutory duty, the existence of a special relationship, or the ability to control the actions of a dependent child who may cause harm to another. None of those situations are present here. The trial court is affirmed.

## FACTS

Terrell C. (Terrell) reported that her six-year-old son was sexually molested by D.T. and C.M., two neighbor boys. D.T. and C.M. lived with their mother and younger sister in the other half of a duplex in which Terrell and her son lived. Terrell asserts that her son was sexually assaulted by the neighbor boys during a time they were being supervised by the Department of Social and Health Services (DSHS) and that the department and a Child Protective Services (CPS) social worker, Anna Baker, were negligent in failing to prevent this assault.

DSHS and Baker first became involved with Terrell when CPS received two referrals reporting the sexual abuse of her son. Terrell found D.T. on top of her son and both were naked. She believed D.T. was attempting anal penetration of her son. When Terrell questioned her son, he said that D.T. had performed oral sex on him several times in the past. He said that C.M. also did the same. Prior to this incident, Terrell had reported these boys and their family to CPS regarding possible sexual abuse and neglect within their home.

A few days after the report of the abuse of Terrell's son, Baker conducted a personal interview with Terrell. At that time Terrell said she never had concerns about the children playing together until she found the boys that day. During

the interview, Terrell learned DSHS was already professionally involved with the neighbor children. Later, she discovered its involvement was due to complaints of sexual abuse by the boys against their younger sister. At one time relatives had been living with the boys and their family but had moved out. Baker told Terrell that she was the CPS social worker for the neighbor family.

Terrell stated that during the interview, while discussing confidentiality rules, Baker posed a rhetorical question to her regarding how she would feel if Baker broadcast to the neighborhood that her child was a victim of sexual abuse or was somehow involved with DSHS and/or CPS. Terrell took this to mean that Baker knew about the neighbor boys' conduct and that due to privacy concerns Baker could not reveal these facts to others.

After the relatives moved out of the neighbor boys' home, purportedly because the boys' mother did nothing about their behavior, Terrell received copies of court documents from those relatives relating to a dependency action pertaining to the boys. The documents included shelter care documents and dependency petitions filed in 1995 premised on physical abuse and neglect.

Terrell filed a complaint against DSHS, Baker, and others, alleging they had breached a duty to warn her about the neighbor boys' sexual aggressiveness. Terrell amended her complaint to include an allegation of a breach of duty to protect other neighbor children and a failure to control the behavior of D.T. while under DSHS supervision. In short, she asserted that DSHS negligently failed to take reasonable steps to protect her son from a danger of foreseeable harm from children under the supervision of DSHS.

Terrell engaged Jon R. Conte, PhD, an expert on social work practice. At his deposition, Dr. Conte offered an opinion that state social workers had *ethical* obligations to the children being supervised as well as to the community if they were aware that the children were acting out sexually towards other children.

DSHS and Baker moved for summary judgment, asserting they owed no duty of care to Terrell and her son, and that they were statutorily barred from disclosing information about the family Baker was investigating and assisting. Prior to the summary judgment hearing, DSHS moved to strike Dr. Conte's deposition. The motion to strike the entire deposition was denied, but the trial court held that it would not consider those portions of Dr. Conte's deposition in which he testified regarding the existence of a legal duty.

The trial court granted summary judgment to DSHS and Baker holding there was no duty to prevent the injuries and incidents alleged. Terrell, individually and as guardian for her son, appeals.

## DISCUSSION

Terrell acknowledges that CPS social workers are vested with significant power to investigate and prevent child abuse. She claims this power creates an enhanced responsibility not only to the children in the assigned cases, but also to other children who may be in foreseeable danger. The basis for her argument is that a "special relationship" exists between a social worker and the dependent children under her supervision and control. The usual standard of review for summary judgment applies.[1]

■ Statutes governing a social worker's interaction with children and their families, especially dependent children, were enacted to further the goals of preventing child abuse

---

[1] *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In an action for negligence, the plaintiff must prove four basic elements: (1) the existence of a duty on the part of the defendant towards the plaintiff, (2) a breach of that duty by the defendant, (3) a resulting injury to the plaintiff, (4) that was proximately caused by the breach. *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984) (citing *Hansen v. Wash. Natural Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981)). The threshold determination of whether DSHS and Baker owed Terrell and her son a duty to warn or control the actions of the neighbor boys is a question of law. *Stenger v. State*, 104 Wn. App. 393, 399, 16 P.3d 655 (2001) (citing *Pedroza*, 101 Wn.2d at 228). The action fails if no duty is established. Questions of law are reviewed de novo. *Sherman v. State*, 128 Wn.2d 164, 183, 905 P.2d 355 (1995).

while preserving the family unit.[2] The authority and obligations imposed on the state social workers arise predominantly from chapter 13.34 RCW (juvenile court), chapter 26.44 RCW (abuse of children), and from Title 74 RCW (public assistance). These statutes do not support a claim that protecting children from abuse includes a duty to reasonably foreseeable victims of those children.

The legislative purpose behind the statutes is to protect client children from abuse while preserving the family integrity. The statutory purpose of the duty to investigate allegations of child abuse is to protect children and families both from abuse and from needless separation.[3] In *Pettis v. State*,[4] an action against DSHS for negligent investigation of claimed physical child abuse by an accused child care worker, this court held that extending a duty of care to nonparental relationships was inconsistent with legislative intent.

The statutes governing social workers are not based on a statutory duty to protect the general community. There was no statutory duty imposed on the CPS social worker under the facts of this case.

Special Relationship:

██ Generally, an actor "has no duty to prevent a third person from causing physical injury to another."[5] An exception exists when a "special relationship" between the actor and the third person "imposes a duty upon the actor to control the third person's conduct."[6] This special relation-

---

[2] *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 79-80, 1 P.3d 1148 (2000). *See also* RCW 13.34.030(5) (definition of dependent child).

[3] *Tyner*, 141 Wn.2d at 79.

[4] *Pettis v. State*, 98 Wn. App. 553, 560, 990 P.2d 453 (1999).

[5] *Taggart v. State*, 118 Wn.2d 195, 218, 822 P.2d 243 (1992) (citing *Petersen v. State*, 100 Wn.2d 421, 426, 671 P.2d 230 (1983)).

[6] RESTATEMENT (SECOND) OF TORTS § 315 (1965), *quoted in Taggart*, 118 Wn.2d at 218; *Petersen*, 100 Wn.2d at 426; *Couch v. Dep't of Corr.*, 113 Wn. App. 556, 564, 54 P.3d 197 (2002).

ship must be " 'definite, established and continuing,' "[7] but it need not be custodial.[8]

In *Taggart v. State*, our Supreme Court held that a state parole officer had a duty to protect others from reasonably foreseeable danger resulting from the dangerous propensities of parolees.[9] The *Taggart* case relied on *Petersen v. State* in which the Supreme Court found that the State had a duty to take reasonable precautions to protect against the dangerous propensities of a recently released state hospital patient.[10]

In reaching the decisions in both *Taggart* and *Petersen* the court recognized the exception to the common law rule stated in *Restatement (Second) of Torts* § 315 (1965):

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

█ The *Restatement* goes on to define various special relationships that give rise to a duty to control a third person. Section 319 is the most relevant to the instant case. It provides that " '[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.' "[11]

In *Taggart* and its progeny, the court determined that community correction officers have special relationships

---

[7] *Hertog ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 276, 288, 979 P.2d 400 (1999) (quoting *Taggart*, 118 Wn.2d at 219).

[8] *Hertog*, 138 Wn.2d at 277 (citing *Taggart*, 118 Wn.2d at 222-23).

[9] *Taggart v. State*, 118 Wn.2d 195, 217-19, 822 P.2d 243 (1992).

[10] *Petersen v. State*, 100 Wn.2d 421, 432, 671 P.2d 230 (1983).

[11] *Taggart*, 118 Wn.2d at 219 (quoting RESTATEMENT (SECOND) OF TORTS § 319 (1965)); *Bishop v. Miche*, 137 Wn.2d 518, 524, 973 P.2d 465 (1999).

with an adjudicated offender because of the ability to control the offender's behavior. These cases premise liability on a failure to properly supervise an adjudicated offender based on the prior crime, and on the statutory court-ordered authority granting the community correction officers the ability to "take charge" of the offender.[12] But in cases where there is no underlying statutory authority to control or take charge of the offender's behavior, no special relationship has been imposed.[13] That is the situation here. The statutory scheme governing social worker relationships with abused children and their families does not give social workers unfettered discretion to impose restrictions on a child or remove the child/children from the home absent court intervention. Unlike the obligations imposed in *Taggart* or *Petersen*, here there is no authority for a social worker to take control.

The statutory scheme does not contemplate that social workers will supervise the general day-to-day activities of a child. Rather the social worker's role is to coordinate and integrate services in accord with the child's best interests and the need of the family.[14] Any "ongoing" relationship between the social worker and the child is to prevent future harm to that child, not to protect members of the community from harm.

This case is analogous to the case of *Stenger v. State*.[15] There, a public school instructor sued DSHS for injuries sustained while working with a developmentally delayed student prone to violent outbursts. The *Stenger* court rejected the plaintiff's argument that because the student

---

[12] *See Bishop*, 137 Wn.2d at 528-29; *Hertog*, 138 Wn.2d at 274; *In re Estate of Jones*, 107 Wn. App. 510, 15 P.3d 180 (2000).

[13] *Couch*, 113 Wn. App. at 565 (court-ordered legal financial obligations did not empower Department of Corrections to supervise offender's activities and did not create the kind of "take charge" relationship required under *Taggart*); *McKenna v. Edwards*, 65 Wn. App. 905, 830 P.2d 385 (1992) (no statutory mandate to supervise third person as offender had not yet been adjudicated as such).

[14] RCW 13.34.025.

[15] *Stenger*, 104 Wn. App. 393, 16 P.3d 655 (2001).

was a ward of the State, the teacher should have been protected from the student's violent behavior by placing the child in a different, more appropriate educational setting. The court held that because there was no authority to change the educational placement, there was no special relationship between DSHS and the child.

Here, as in *Stenger*, there is no authority for the CPS social worker to change the placement of the neighbor children absent court order, or to otherwise control their behavior in order to protect the public. Terrell cannot establish the existence of a common law duty that required DSHS to protect her son from the harm caused by the neighbor boys. Nor had DSHS taken charge of the boys such to require that it control the conduct of the boys to prevent them from harming Terrell's son.

Public Duty Doctrine:

■ Further, Terrell claims that because of the special relationship between DSHS/Baker and the neighbor children, the public duty doctrine does not bar Terrell's claims and, indeed, supports her claim. To establish a special relationship under the public duty doctrine, Terrell must show that "(1) direct contact or privity between the public official and her sets her apart from the general public, (2) express assurances were given to her by a public official, and (3) the assurances justify her reliance."[16] None of these criteria was present in this case. Prior to Terrell's contacting DSHS, there was no direct contact or privity between DSHS/Baker and Terrell, and there were no assurances given to her by Baker or others on which she could rely.

Terrell claims the trial court abused its discretion by denying her motion to compel DSHS/CPS records regarding the children under CPS supervision who likely abused her son. We disagree.

■ Terrell's stated purpose for obtaining the records from DSHS and CPS was to determine "whether and when

---

[16] *Pettis*, 98 Wn. App. at 563 (citing *Keates v. City of Vancouver*, 73 Wn. App. 257, 269-70, 869 P.2d 88 (1994)).

the State's duty of care toward [her son] arose." However, the question of whether DSHS owed a duty of care to Terrell and her son is one of law. Because we determine there is no duty in this case, this issue is moot.

Terrell claims the trial court abused its discretion by striking a portion of the testimony of her expert witness, Dr. Jon Conte. Terrell sought to have the testimony admitted to assert that DSHS social workers had a duty to warn Terrell of the risks posed by the neighbor children. She claims that the purpose of Dr. Conte's opinion was not to establish a "legal" duty.

This court reviews a trial court's ruling on a motion to strike for an abuse of discretion.[17] Experts may not offer opinions of law in the guise of expert testimony.[18] Legal opinions on the ultimate legal issue are not properly considered under the guise of expert testimony and a trial court errs if it considers those opinions expressed in affidavits. Furthermore, a trial court does not abuse its discretion where it disregards inadmissible legal conclusions.[19] Further, under CR 56(e), affidavits and declarations submitted in summary judgment proceedings must be based on factual allegations that are admissible in evidence and that are made on personal knowledge.[20]

Even Dr. Conte admitted that the reason he was retained was to "discuss the duty a social worker has to warn other individuals who are at risk because of the behavior of a social work client." While he did not use the term "legal" duty, that is what he was attempting to establish. The trial

---

[17] *Stenger*, 104 Wn. App. at 407 (citing *King County Fire Prot. Dist. No. 16 v. Hous. Auth. of King County*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994)).

[18] ER 704 cmt.; *King County Fire Prot. Dist.*, 123 Wn.2d at 826 n.14.

[19] *King County Fire Prot. Dist.*, 123 Wn.2d at 826.

[20] CR 56(e); *Stenger*, 104 Wn. App. at 408-09.

court did not abuse its discretion in granting, in part, the State's motion to strike.

The trial court is affirmed.

BAKER and SCHINDLER, JJ., concur.

Review denied at 152 Wn.2d 1018 (2004).