# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| M.M.S., a minor (DOB 03/07/2007) and CRYSTAL ARMSTRONG, individually and as GUARDIAN AD LITEM for M.M.S., | No. 49287-3-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES and CHILD PROTECTIVE SERVICES, | PUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Crystal Armstrong, individually and on behalf of her minor daughter M.M.S., appeals from the superior court's order granting the Department of Social and Health Service's (Department) motion for summary judgment and dismissal. Crystal[1] filed a lawsuit alleging that the Department was negligent for failing to obtain and review records from prior dependency proceedings involving her stepson J.A. before placing J.A. in the home with his biological father and Crystal. Crystal alleges that the Department's negligence allowed J.A. the opportunity to engage in inappropriate behavior with M.M.S. Specifically, Crystal argues that the Department had a common law duty to warn Crystal and that the Department had a statutory duty to investigate under RCW 26.44.050.

---

[1] For clarity, the Armstrongs are individually referred to by their first names. We intend no disrespect.

We hold that under the specific facts presented here, the Department did not have any actionable duty to either Crystal or M.M.S. Therefore, we affirm the superior court's order granting summary judgment in favor of the Department and dismissing Crystal's claims.

FACTS

J.A. (born 2001) is the child of Seann Armstrong. Crystal is Seann's wife and J.A.'s stepmother. Seann and Crystal live together in Surrey, British Columbia with their mutual child and Crystal's children, including M.M.S. (born 2007). From the time he was two years old, J.A. was raised by his biological mother and Seann had little involvement in his life.

In 2005 and again in 2010, the Department removed J.A. from his biological mother's care and filed petitions for a dependency as to J.A. During the 2005 dependency, J.A. was placed with his paternal grandparent, then placed with a maternal cousin, and ultimately placed in a foster home. After both dependency actions, J.A. was returned to his mother's care.

In April 2013, the Department again removed J.A. from his mother's care and placed him with his paternal aunt. However, in this dependency, the Armstrongs actively pursued custody of J.A. On July 31, 2013, Seann's attorney filed a motion to have J.A. placed with the Armstrongs. The dependency court granted the motion. On August 7, 2013, J.A. moved to live with the Armstrongs in British Columbia. After J.A. moved to British Columbia, Seann worked to establish a parenting plan so that the dependency action could be dismissed.

On September 23, 2013, Crystal reported to J.A.'s social worker, Michelle Christensen, that J.A. had grabbed M.M.S.'s hair, pushed her down, wrapped his legs around her, and kissed her on the lips. Crystal also informed Christensen that M.M.S. was currently sleeping with Crystal and Seann to prevent any further inappropriate incidents between J.A. and M.M.S.

2

On October 1, Crystal and Seann asked to have J.A. removed from their home although they did not report any additional incidents between J.A. and M.M.S. Christensen arranged for J.A. to be returned to Washington and to be placed in a licensed foster home. J.A. was then moved to a therapeutic foster home where he has resided since.

After J.A.'s inappropriate behavior with M.M.S., Crystal learned that J.A. had a history of sexualized behavior. During the 2005 dependency, J.A.'s paternal grandparents reported that J.A. was sexually acting out by frequently touching himself. In 2008, a parent educator filed a report that documented sexually inappropriate behavior between J.A. and his younger half-sister. After J.A. was placed with his mother in 2008, there were concerns about his behavior because he told his half-sister he wanted to lay on top of her.

In 2010, J.A.'s mother reported that she caught J.A. being sexually inappropriate with his half-sister on two occasions. While J.A. was placed in foster care, the foster mother reported two incidents of J.A. laying on top of another foster child. During the 2010 dependency, the Department staffed J.A. for sexually aggressive youth (SAY) services. The SAY committee within the Department determined that J.A. was not a sexually aggressive youth and thus, he did not need to be referred for SAY services. During the 2010 dependency, J.A.'s paternal aunt's ex-husband had asked that J.A. be removed from the home because of a rumor he had heard about J.A. sexually acting out with another child.

Christensen did not retrieve the closed dependency files from the archives and because she was not involved in any of the prior dependencies, she was not aware of the incidents reported by J.A.'s mother or paternal grandparents. However, she was aware of why J.A. was removed from his paternal aunt's house in 2010.

On June 17, 2015, Crystal, on behalf of herself and as guardian for M.M.S., filed a complaint for damages against the Department. The Department filed a motion for summary judgment arguing that the Department owed no duty to Crystal or M.M.S. In response, Crystal argued two specific causes of action applied to the Department: (1) a common law duty to disclose the information about J.A.'s prior sexualized behavior and (2) a statutory duty under RCW 26.44.050 to investigate J.A.'s history and suitability for the Armstrong's home. Crystal alleged that the Department breached both duties because of Christensen's failure to discover and disclose J.A.'s prior sexualized behavior. And Crystal also moved for partial summary judgment on duty, breach, and causation.

The superior court granted the Department's motion for summary judgment, denied Crystal's cross-motion for partial summary judgment, and entered an order dismissing Crystal's complaint with prejudice. Crystal appeals.

ANALYSIS

Crystal is very explicit in her claims against the Department. Crystal argues that the Department's liability arises *only* from Christensen's failure to discover and disclose J.A.'s prior sexualized behavior that was documented in the earlier dependencies. And Crystal is making only two specific claims: (1) that the Department has a common law duty to disclose a dependent child's prior sexualized behavior before placing a child and (2) that the Department is liable under RCW 26.44.050 for its negligent investigation.

We hold that the Department has no common law duty to disclose information prior to returning a child to the home of a biological parent at the parent's request. We also hold that a negligent investigation cause of action under RCW 26.44.050 does not apply here because there

was no report that M.M.S. was abused or neglected before J.A. was placed in the Armstrong's home. Accordingly, we affirm the superior court's order granting summary judgment to the Department and dismissing Crystal's complaint.

## I. LEGAL PRINCIPLES: SUMMARY JUDGMENT AND NEGLIGENCE

We review a superior court's order granting summary judgment de novo. *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *McCarthy v. Clark County*, 193 Wn. App. 314, 328, 376 P.3d 1127, *review denied*, 186 Wn.2d 1018 (2016). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one that affects the outcome of the litigation. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *McCarthy*, 193 Wn. App. at 328.

To prove a negligence claim, the plaintiff must show (1) the defendant owed a duty to him or her, (2) the defendant breached that duty, (3) the injury resulting from the breach, and (4) proximate cause between the defendant's breach of duty and the plaintiff's injury. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Whether the defendant owes a duty to the plaintiff is a question of law that we review de novo. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). A duty of care may exist by virtue of the common law or a statute. *Mathis v. Ammons*, 84 Wn. App. 411, 416-17, 928 P.2d 431 (1996). Here, Crystal alleges that the Department had both a common law duty to disclose or warn and a statutory duty to investigate.

## II.  COMMON LAW DUTY TO DISCLOSE

Crystal argues that the Department had a common law duty to herself and M.M.S. to review J.A.'s prior dependency records and disclose information regarding J.A.'s prior sexualized behavior.  First, Crystal argues that the Department had a duty under *Restatement (Second) of Torts* § 314 A and § 315 (Am. Law Inst. 1965).  Second, Crystal argues that the Department performed an affirmative act that created a high risk of harm and, as a result, had a duty under *Restatement (Second) of Torts* § 302 B.  Both of these arguments fail.

A.  *RESTATEMENT (SECOND) OF TORTS* § 314 A AND § 315

*Restatement (Second) of Torts* § 314 A is titled "Special Relations Giving Rise to Duty to Aid or Protect" and states,

> (1) A common carrier is under duty to its passengers to take reasonable action
>     (a) to protect them against unreasonable risk of physical harm, and
>     (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
> (2) An innkeeper is under a similar duty to his guests.
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
> (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

RESTATEMENT (SECOND) OF TORTS § 314 A at 118.

*Restatement (Second) of Torts* § 315 states the general principle of when there is a duty to control the conduct of third persons,

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>     (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

RESTATEMENT (SECOND OF TORTS) § 315 at 122.

Crystal does not explain how the Department has a special relationship with her or M.M.S. under the principles of § 314 A. The Department is clearly not a common carrier, innkeeper, or land owner. And the Department did not take custody of M.M.S. Further, because M.M.S. was always in the custody and care of her mother, the Department did not do anything to deprive M.M.S. of normal opportunities for protection. Therefore, there is no special relationship under § 314 A.

As to Crystal's claim under § 315, in general, the Department has no duty to control the behavior of a dependent child under the *Restatement*. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 453, 128 P.3d 574 (2006); *Terrell C. v. Dep't of Soc. & Health Servs.*, 120 Wn. App. 20, 26-29, 84 P.3d 899 (2004). However, Crystal argues, "Liability is premised not on failing to control the child's behaviors, but on failing to discover what was in the records after being told about past behaviors and then failing to alert the dependency court or the new caretakers about the dependent child's history of inappropriate conduct dangerous to younger children." Br. of Appellant at 18-19.

Crystal does not explain how a duty to aid, a duty to protect, or a duty to control a third person imposes a duty to discover or disclose information. Because Crystal explicitly admits that the Department's alleged liability is not premised on the failure to control J.A.'s behavior, there is no reasonable connection between the Department's alleged liability and the principles in *Restatement (Second) of Torts* § 315.

Thus, Crystal has failed to demonstrate that the principles in either § 314 A or § 315 create a duty to either her or M.M.S.

B.  *RESTATEMENT (SECOND) OF TORTS* § 302 B

Crystal also argues that the Department performed affirmative actions which created a duty to discover and disclose information under *Restatement (Second) of Torts* § 302 B.  *Restatement (Second) of Torts* § 302 B—Risk of Intentional or Criminal Conduct—states,

> An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

RESTATEMENT (SECOND) OF TORTS § 302 B at 88.  A person may have a duty to protect another from criminal acts of third parties when the person's "own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct."  RESTATEMENT (SECOND) OF TORTS § 302 B cmt. *e* at 90; *Washburn v. City of Federal Way*, 178 Wn.2d 732, 757-58, 310 P.3d 1275 (2013).

Crystal argues that "the [Department]'s failure to warn [Crystal] or to inform the [c]ourt of [J.A.]'s known history of sexual inappropriateness with younger children, was an affirmative act," and therefore, the Department had a duty under § 302 B.  Br. of Appellant at 23.  Although Crystal purports to rely on § 302 B, her argument is actually based on policy considerations and the general negligence principles of compensating victims and deterring future negligence.  Crystal has offered no authority to support concluding that a legal duty exists based solely on general principles and policies underlying general negligence.  RAP 10.3(a)(6); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition,

8

the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Moreover, in this specific case, the facts do not support concluding that the Department had an affirmative duty to warn of J.A.'s prior sexualized behavior. Here, there was no *unreasonable* risk of harm because J.A.'s biological father was affirmatively requesting the placement and J.A. had previously been placed in the care of his father's immediate family for most of his time in out-of-home care. We cannot agree that returning a child, even a child with behavioral problems known to his family members, creates an unreasonable risk of harm giving rise to affirmative duties under *Restatement (Second) of Torts* § 302 B. Accordingly, Crystal's claim fails.

### III. NEGLIGENT INVESTIGATION—RCW 26.44.050

Crystal argues that she has a negligent investigation cause of action under RCW 26.44.050 because the Department performed an incomplete investigation into J.A.'s background which resulted in a placement that harmed a child, here M.M.S. However, Crystal's argument takes a very narrow reading of the language in our Supreme Court's opinion in *M.W.* And she completely disregards the statutory language from which the negligent investigation cause of action is derived. The duty to investigate is triggered by a report concerning possible child abuse or neglect. Here, there was no report that M.M.S was abused or neglected before J.A. was placed in the home. Because the Department did not owe either Crystal or M.M.S. a duty under RCW 26.44.050, the superior court properly granted summary judgment and dismissed the negligent investigation claim.

RCW 26.44.050 requires the Department or law enforcement to investigate reports of child abuse or neglect

> upon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the [Department] must investigate and provide the protective services section with a report . . . and where necessary to refer such report to the court.

The explicit statutory duty to investigate reports of child abuse or neglect creates a cause of action against the Department and law enforcement for a negligent investigation resulting in a harmful placement decision. *M.W.*, 149 Wn.2d at 595. However, the negligent investigation cause of action is a "narrow exception" to the rule that there is no general tort claim for negligent investigation. *M.W.*, 149 Wn.2d at 601.

In *M.W.*, our Supreme Court provided the analytical framework for determining whether to expand the negligent investigation cause of action. To determine whether there is a cause of action for negligent investigation under RCW 26.44.050, our courts apply the test from *Bennett v. Hardy* which requires courts to determine:

> (1) whether the plaintiff is within the class of persons for whose benefit the statute was enacted, (2) whether the legislative intent supports creating a remedy, and (3) whether the underlying purpose of the legislation is consistent with inferring a remedy.

*M.W.*, 149 Wn.2d at 596 (citing *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990)).

The second prong of the *Bennett* test is no longer at issue. *M.W.*, 149 Wn.2d at 596-97.

Under the plain language of RCW 26.44.050, neither Crystal nor M.M.S. are within the class of persons for whose benefit RCW 26.44.050 was enacted. RCW 26.44.050 imposes a duty to investigate "upon the receipt of a report concerning the possible occurrence of abuse or neglect . . . ." Based on this language, RCW 26.44.050 was enacted to benefit children who are subjects of reports concerning possible abuse or neglect.

Crystal alleges that the Department had a duty to investigate J.A.'s background to determine whether placement in their home was appropriate. But, RCW 26.44.050 imposes no such duty. RCW 26.44.050 imposes a duty to investigate reports concerning the possible occurrence of child abuse or neglect. Here, not only were there no reports of abuse or neglect concerning M.M.S. or Crystal, there were no reports of abuse or neglect made during J.A.'s placement throughout the 2013 dependency proceeding.

Because RCW 26.44.050 imposes a specific duty to investigate reports concerning the possible occurrence of child abuse or neglect, it was enacted to benefit parents and their children who are the subject of reports concerning possible abuse or neglect. Crystal and M.M.S. are not within this class of persons because there were no reports of possible abuse or neglect which triggered a duty to investigate on behalf of the Department. Because Crystal and M.M.S. are not within the class of persons that RCW 26.44.050 was enacted to benefit, we decline to expand the negligent investigation cause of action under RCW 26.44.050 to include a requirement that the Department investigate a child's background prior to returning him or her to a biological parent at the parent's request.

No. 49287-3-II

Crystal has failed to demonstrate that the Department owed a common law or statutory duty to either her or M.M.S. Accordingly, the trial court did not err by granting the Department's motion for summary judgment. We affirm.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.