**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| LESA M. SAMUELS, | No. 51827-9-II |
| Appellant, | |
| v. | |
| MULTICARE HEALTH SYSTEM and GLORIA N. LEM, ARNP, DOES 1-10, and CITY OF TACOMA, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Lesa Samuels appeals the superior court's order determining that the City of Tacoma was entitled to qualified immunity, dismissing her negligence claim, and awarding statutory costs to the City. Samuels argues that (1) the applicable standard of fault is simple negligence, (2) the qualified immunity statute, RCW 18.71.210(1), does not apply, and (3) there are genuine issues of material fact as to gross negligence, and thus, the City is not entitled to qualified immunity and the superior court erred. We hold that RCW 18.71.210(1) applies, there are no genuine issues of material fact under the applicable gross negligence standard, the City is entitled to qualified immunity as a matter of law, and thus, the superior court did not err. We affirm the superior court's order and award of statutory costs.

FACTS

On December 24, 2015, Tacoma Fire Department emergency medical technicians (EMTs) and paramedics (collectively first responders) responded to a 911 call at Samuels's home. Samuels asked her significant other, Arnold Williams, to call 911 because she was experiencing dizziness,

a headache, and numbness in her face and right arm. When the first responders arrived at Samuels's home, they asked why they had been called to assist her and she said, "I think I'm having a stroke." Clerk's Papers (CP) at 426. She also told them that she started experiencing facial numbness about an hour earlier.

Pierce County has adopted prehospital stroke triage procedures for first responders to identify stroke patients in the field and take those patients to the most appropriate hospital. According to the stroke protocols, the first responders are to assess the applicability for triage by getting a

[r]eport from [the] patient or [a] bystander of one or more sudden:
- Numbness or weakness of the face, arm, or leg, especially on one side of the body
- Confusion, trouble speaking or understanding
- Trouble seeing in one or both eyes
- Trouble walking, dizziness, loss of balance or coordination
- Severe headache with no known cause

CP at 69.

When evaluating a patient for symptoms of a possible stroke, first responders administer a FAST examination to assess whether a patient might be having a stroke. A FAST examination requires a first responder to check the patient for the following symptoms:

Face: unilateral face droop?

Arms: unilateral drift or weakness?

Speech: abnormal or slurred?

Time last normal (determine [the] time patient [was] last known [as] normal)[.]

CP at 69 (underscore omitted). If the patient demonstrates any one of these symptoms (face, arms, or speech), it is likely the patient is having a stroke, and the first responders are directed to transport

the patient to the nearest stroke center, limit the time at the scene, and alert the destination hospital as soon as possible.

The "F" of the FAST examination refers to asking the patient to smile, make a face, or "show his or her teeth," to see if each side of the face moves as well as the other. CP at 70. A normal response occurs when both sides of the face move equally. An abnormal response is when one side of the face does not move as well as the other side.

The "A" in the FAST examination refers to arm drift, where the first responders ask the patient to close her eyes and extend both arms straight out for 10 seconds. The palms should be facing up with thumbs pointing out. A normal response is for both arms to move in the same manner. An abnormal response is when one arm drifts down or one arm does not move at all.

The "S" in the FAST examination refers to speech, where the first responders ask the patient to repeat a simple phrase such as, "Firefighters are my friends." CP at 70. A normal response is for the patient to say the requested phrase correctly without slurring. An abnormal response occurs if the patient slurs, says the wrong words, or is unable to speak.

The "T" in the FAST examination refers to asking the patient, family, or bystanders about the "[t]ime last normal (determine [the] time patient [was] last known [as] normal)." CP at 69.

In her deposition, Samuels described what the first responders did during the FAST examination of her:

> A: He [referring to one of the first responders] looked in my eyes, and he looked in my throat, and then he also did the – the resistant (sic) test.
>
> . . . .
>
> Q: Did – when you say "the resistance test," you're – you held your hands out – we have to get this for the record – you held your hands out in front of you?

A: Yes.

Q: And you put your palms up and down?

A: Yes.

Q: Did he actually press on your hands to see whether –

A: Yes.

Q:  – you could hold them up?

A: Yes.  He pushed down a little bit; so I had to push and pull.

Q: Okay.

A. I mean push and – and – and lift.

Q: Okay.

A. Right.

Q: And did you have any trouble resisting the pressure that he put on your hands?

A: No.

CP at 50.

The first responders took Samuels's vitals, including her pulse, respiratory rate, blood pressure, glucose, and pulse oximetry.  The FAST examination revealed that Samuels's grip on each side was equal, her pupils were normal, her facial grimace was equal, she was able to lift both palms equally and steadily, she had control over her upper extremities, and she was oriented and able to communicate orally.  Samuels claims that the first responders did not fully complete the FAST examination because they did not ask her to smile or grimace as required by the protocols. The first responders spoke with her for a period of time and were able to observe her speech.  When

asked, she denied experiencing any loss of consciousness, chest pain, shortness of breath, nausea, vomiting, or diarrhea. They observed that her skin was pink, warm, and dry, and her lungs were clear. She reported that she did not have any significant medical history and was not taking medication although she had recently taken an over-the counter cold medicine, which she had used before without incident.

The first responders determined that the FAST examination was negative for a stroke because they (1) did not observe a unilateral face droop, (2) noted that there was no unilateral drift or weakness in her arms, and (3) observed that her speech was normal. According to the Pierce County protocols, a negative FAST examination meant that the patient qualified for basic life support transport if she wanted it. Following the protocols, the first responders recommended that Samuels either take a private ambulance to Tacoma General Hospital's emergency room, or have her significant other drive her there. Samuels testified that one of the first responders told her, "[Y]ou're not having a stroke." CP at 53, 733.

After about 10 minutes, the first responders left Samuels's home believing that Samuels's significant other was going to transport her to Tacoma General Hospital's emergency room. The patient contact report for Samuels states that "the spouse of [the patient] was going to [transport] the [patient] [via privately owned vehicle] to [Tacoma General Hospital's emergency room]." CP at 64. After the first responders left, Samuels continued to experience dizziness and suffer from a "squeezing" headache, but decided not to go to the emergency room. CP at 43. She went to work the next morning and worked a full shift and also worked her full shift for the next three days.

5

On December 30, Samuels went to the MultiCare Westgate Urgent Care Center. At MultiCare, Gloria Lem, Advanced Registered Nurse Practitioner (ARNP), treated her for a headache and sent her home. On January 5, 2016, Samuels went to Tacoma General Hospital's Emergency Room where a doctor examined her and determined that she was exhibiting symptoms that indicated she had recently suffered from a stroke.

Samuels then sued the City of Tacoma. In her complaint, Samuels alleged that the City was liable for the first responders' negligent conduct in misdiagnosing her medical condition and failing to properly treat her stroke. The City filed a motion for summary judgment arguing that there were no genuine issues of material fact and that it was entitled to qualified immunity as a matter of law under RCW 18.71.210(1) because the first responders were acting in good faith and without gross negligence. In support of its motion, the City filed the Pierce County protocols that the first responders were required to follow, the patient contact report from the incident, and portions of Samuels's deposition testimony where she described what the first responders did in administering the FAST examination. In opposition to the summary judgment motion, Samuels provided the expert opinions of Dr. David Lombardi, a licensed medical doctor in California who specializes in treating stroke patients, and Dr. Kevin Brown, a licensed medical doctor in New York who specializes in emergency medicine.

The superior court ruled that there was no genuine issue of material fact as to gross negligence and that the City was entitled to qualified immunity as a matter of law under RCW

18.17.210. The court then granted the motion, dismissed Samuels's negligence claim, and awarded statutory costs to the City under RCW 4.84.010. Samuels appeals.[1]

## ANALYSIS

Samuels argues that (1) simple negligence, not gross negligence, is the applicable fault standard, (2) any alleged failure of the first responders to follow the Pierce County protocols precludes qualified immunity, and thus, RCW 18.71.210(1) does not apply, and (3) there are genuine issues of material fact as to gross negligence and the City was not entitled to qualified immunity. We hold that RCW 18.71.210(1) applies, there are no genuine issues of material fact under the applicable gross negligence standard, the City is entitled to qualified immunity as a matter of law, and thus, the superior court did not err.

## I. LEGAL PRINCIPLES

We review a superior court's order granting summary judgment de novo. *Larson Motors, Inc. v. Snypp*, 3 Wn. App. 2d 127, 135, 413 P.3d 632, *review denied*, 191 Wn.2d 1013 (2018). We review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Snypp*, 3 Wn. App. 2d at 135. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Snypp*, 3 Wn. App. 2d at 135. "If reasonable minds can reach only one

---

[1] Samuels initially sued MultiCare Health System and Gloria Lem, ARNP, for medical malpractice under chapter 7.70 RCW, but settled with these defendants and amended her complaint to add the City as a defendant. Samuels sought discretionary review, which a commissioner of this court denied. Ruling Denying Review, 501413-8-II (Sept. 21, 2017). In January 2018, Samuels settled and dismissed her remaining claims against MultiCare and Lem.

conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

## II.  QUALIFIED IMMUNITY

### A.  APPLICABLE FAULT STANDARD

Samuels initially argues that RCW 18.71.210 does not apply and that simple negligence, not gross negligence, is the correct fault standard.  She also argues that any deviation from the treatment protocols defeats qualified immunity.  We hold that gross negligence is the applicable fault standard and that Samuels's interpretation of RCW 18.17.210 is not consistent with the plain language of the statute.  Thus, her arguments on this basis fail.

We review interpretations of a statute de novo.  *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).  When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent.  *Jametsky*, 179 Wn.2d at 762.  In determining the legislature's intent, we must first examine the statute's plain language and ordinary meaning.  *Jametsky*, 179 Wn.2d at 762.  Legislative definitions included in the statute are controlling, but in the absence of a statutory definition, we give the term its plain and ordinary meaning as defined in the dictionary. *American Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004).  In addition, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole when analyzing a statute's plain language.  *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012).

If there is more than one reasonable interpretation of the plain language, the statute is ambiguous.  *Jametsky*, 179 Wn.2d at 762.  When a statute is ambiguous, we resolve ambiguity by engaging in statutory construction and considering other indications of legislative intent.

*Jametsky*, 179 Wn.2d at 762. However, if the statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources. *Jametsky*, 179 Wn.2d at 762.

> The qualified immunity statute, RCW 18.71.210(1) states:
>
> No act or omission of any physician's trained advanced emergency medical technician and paramedic, as defined in RCW 18.71.200, or any emergency medical technician or first responder, as defined in RCW 18.73.030, *done or omitted in good faith while rendering emergency medical service under the responsible supervision and control of a licensed physician or an approved medical program director* or delegate(s) to a person who has suffered illness or bodily injury shall impose any liability upon:
>
> . . . .
>
> (g) *Any* federal, state, county, *city*, or other local governmental unit or employees of such a governmental unit.

(Emphasis added.)

RCW 18.71.210 applies to emergency medical service personnel, allowing them immunity from liability for actions or omission done in good faith while rendering emergency medical service. *Marthaller v. King County Hosp. Dist. No. 2*, 94 Wn. App. 911, 915-16, 973 P.2d 1098 (1999). The statute's purpose is "to protect [first responders] from 'the unduly inhibiting effect the fear of personal liability would have on the performance of [their] professional obligations.'" *Marthaller*, 94 Wn. App. at 916 (quoting *Savage v. State*, 127 Wn.2d 434, 441-42, 899 P.2d 1270 (1995)). Under RCW 18.71.210, "Qualified immunity is immunity from suit, not simply from liability." *Marthaller*, 94 Wn. App. at 916.

The immunity from suit does not extend to "any act or omission which constitutes either gross negligence or willful or wanton misconduct." RCW 18.71.210(5). "Gross negligence" is "negligence substantially and appreciably greater than ordinary negligence." *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965). "Gross negligence" also means the "failure to exercise slight care." *Nist*, 67 Wn.2d at 331. "Gross negligence" does not mean the total absence of care, but care substantially or appreciably less than the quantum of care inhering in ordinary negligence. *Nist*, 67 Wn.2d at 331; *Johnson v. Spokane to Sandpoint, LLC*, 176 Wn. App. 453, 460, 309 P.3d 528 (2013).

> Our Supreme Court recently clarified the definition of gross negligence:
>
> To survive summary judgment in a gross negligence case, a plaintiff must provide substantial evidence of serious negligence. In determining whether the plaintiff has provided substantial evidence, the court must look at all the evidence before it, evidence that includes both what the defendant failed to do *and* what the defendant did. If a review of all the evidence suggests that reasonable minds could differ on whether the defendant may have failed to exercise slight care, then the court must deny the motion for summary judgment. But if a review of all the evidence reveals that the defendant exercised slight care, and reasonable minds could not differ on this point, then the court must grant the motion.

*Harper v. State*, 192 Wn.2d 328, 345-46, 429 P.3d 1071 (2018).

Thus, we hold that the applicable fault standard is gross negligence here, not simple negligence as Samuel claims. To defeat summary judgment, under *Harper*, Samuels must provide substantial evidence of serious negligence.

Samuels further argues that RCW 18.71.210 simply provides a standard of fault greater than simple negligence when the protocols are followed. According to Samuels, RCW 18.71.210 does not provide qualified immunity to first responders even if they follow all of the applicable protocols. Samuels's argument is inconsistent with the plain language of the statute that explicitly

provides qualified immunity to first responders for their actions when "done or omitted in good faith while rendering emergency medical service under the responsible supervision and control of a licensed physician or an approved medical program director." RCW 18.71.210(1). Further, Samuels's argument is inconsistent with the policy underlying the statute—that RCW 18.71.210 is intended, "to protect [first responders] from 'the unduly inhibiting effect the fear of personal liability would have on the performance of [their] professional obligations.'" *Marthaller*, 94 Wn. App. at 916 (quoting *Savage*, 127 Wn.2d at 441-42). Because the statute's language and the underlying policy provide immunity from suit, we hold that Samuels's argument on this basis fails. We address Samuels's additional arguments related to gross negligence below.

B.  VIOLATION OF PROTOCOLS

Samuels argues that there are genuine issues of material fact because the first responders failed to complete the FAST examination and did not operate under the direction of an approved medical program director as required by the Washington Administrative Code. Thus, Samuels claims that the superior court erred by granting summary judgment dismissal of her claim. We disagree.

1.  FAST Examination

Samuels argues that a FAST examination was not administered to her and that she presented symptoms of high blood pressure, facial numbness, facial droop, and self-reported indications of a stroke. Even assuming these facts in the light most favorable to Samuels, they do not create any genuine issues of material fact of gross negligence based on this record.

Under *Harper*, Samuels must provide substantial evidence of serious negligence to survive summary judgment. *Harper*, 192 Wn.2d at 342. Here, the first responders exercised at least slight care in their FAST examination of Samuels. They took actions that allowed them to evaluate each aspect of the FAST examination (face, arms, speech) and, based on that evaluation, determined that there were no positive stroke symptoms. Under the protocols, because Samuels's symptoms did not meet the requirements under the FAST examination for immediate transport, they did not immediately transport her to the nearest stroke center at Tacoma General Hospital. They advised her to go to the emergency room either by private ambulance or personal vehicle and after they were done, they left believing that her significant other would be taking her to the hospital, although Samuels disputes this fact.

Viewing the evidence in the light most favorable to Samuels, reasonable minds could not differ on whether the first responders exercised at least slight care. Because the first responders exercised at least slight care, Samuels fails to raise a genuine issue of material fact as to gross negligence.

2. Supervision by an Approved Medical Director and Scope of Authority

Samuels next argues that "[o]nly EMTs and paramedics trained under the supervision of an approved medical director, among other things, are subject to, and the beneficiaries of, RCW 18.71's rules and privileges" Appellant's Opening Br. at 30. That statement is incorrect.

RCW 18.71.210(1)(g) specifically provides in relevant part that qualified immunity to "[a]ny . . . city, or other local governmental unit or employees of such a governmental unit." This language includes the first responders here. The first responders also meet the requirements set out in RCW 18.71.210(1). There is no dispute that the first responders were acting as first

responders or EMTs as defined in the statute. Further, Samuels has not presented any evidence showing that the first responders were not acting in good faith. *See Marthaller*, 94 Wn. App. at 917 ("[R]easonable minds could not differ on the question here because there is absolutely no evidence in the record to suggest that the paramedics acted without good faith.").

"Emergency medical service" means "medical treatment and care which may be rendered at the scene of any medical emergency or while transporting any patient in an ambulance to an appropriate medical facility, including ambulance transportation between medical facilities." RCW 18.73.030(10). The first responders rendered emergency medical services because they were assessing Samuels for what she thought was a stroke. The first responders acted under the responsible supervision and control of an approved medical program director. The first responders rendered emergency medical service to a person who suffered illness or bodily injury because they took Samuels's vitals and assessed her for stroke symptoms in her home when she thought she was having a stroke. Accordingly, her argument on this basis fails because the first responders meet the requirements of both RCW 18.71.210(1) and RCW 18.71.210(1)(g).

Samuels also argues the first responders were required to contact their medical program director "when unresolved potential stroke symptoms, including . . . a self-diagnosis of stroke by the patient," are known to them, and by not doing so, they acted outside their scope of authority and violated WAC 246-976-182(2). Appellant's Opening Br. at 32. Even viewing the evidence in the light most favorable to Samuels, she fails to create a genuine issue of material fact as to gross negligence.

Under WAC 246-976-182(2),

If protocols and regional patient care procedures do not provide off-line direction for the situation, the certified person in charge of the patient must consult with their online medical control as soon as possible. Medical control can only authorize a certified person to perform within their scope of practice.

Under WAC 246-976-182, first responders are required to contact the medical program director only when the protocols did not provide appropriate direction for the circumstance. Here, the protocols governed the first responders' interaction with Samuels and they acted within those protocols by performing the FAST examination.

As discussed above, "gross negligence means the failure to exercise slight care." *Nist*, 67 Wn.2d at 324. Under *Harper*, Samuels must provide substantial evidence of serious negligence. 192 Wn.2d at 342. Samuels fails to provide substantial evidence of departure from the protocols. Further, her interpretation of RCW 18.71.210 would lead to absurd results that would defeat qualified immunity and permit liability even where the first responders acted in good faith and without gross negligence. Such an interpretation is not consistent with the plain language of the statute or the legislature's purpose as discussed above. And we avoid construing a statute to lead to absurd results. *Jespersen v. Clark County*, 199 Wn. App. 568, 578, 399 P.3d 1209 (2017). Thus, Samuels's argument on this basis fails.

3. Medical Diagnosis

Samuels also argues that the first responders gave her a medical diagnosis when one of them told her that "you're not having a stroke," and that neither the applicable regulation nor the protocols allow first responders to diagnose or rule out a medical condition. We disagree.

The first responders are required, as part of their job and within the scope of their practice, to assess and communicate to the patient at the time.[2] Viewing the evidence in the light most favorable to Samuels, even if this statement was made to her by a first responder, Samuels fails to present substantial evidence of serious negligence. In sum, reasonable minds could not differ on whether the first responders acted with gross negligence and that the City is entitled to qualified immunity as a matter of law. Thus, we hold that the superior court did not err by granting summary judgment and dismissing her claim.[3]

## IV. COSTS

Samuels argues that the superior court erred in awarding statutory costs to the City. We hold that the award of costs to the City was appropriate, and thus, the court did not err.

RCW 4.84.010 provides that "[t]he measure and mode of compensation of attorneys and counselors, shall be left to the agreement, expressed or implied, of the parties, but there shall be allowed to the prevailing party upon the judgment certain sums for the prevailing party's expenses in the action, which allowances are termed costs." In other words, the prevailing party is entitled to costs under RCW 4.84.010.

Here, the City prevailed on its motion for summary judgment. The superior court then awarded $200 in costs to the City pursuant to RCW 4.84.010. Because the statute permits the award of costs to the prevailing party and the City prevailed, we affirm the superior court's award of statutory costs.

---

[2] *See* Wash. Court of Appeals oral argument, *Samuels v. City of Tacoma*, No. 51827-9-II (June 25, 2019) at 23 mi., 30 sec. to 24 min., 13 sec. (on file with court.)

[3] Because we affirm, we do not reach the issue of whether expert opinion testimony is required.

No. 51827-9-II

We affirm the superior court's order granting summary judgement and award of statutory costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

I concur:


_____
GLASGOW, J.

16

MELNICK, P.J. (concur in part, dissent in part) — Because material issues of fact are in dispute, I respectfully disagree with the majority's decision to affirm the trial court's grant of summary judgment. Even if we resolve all of the disputed material facts in favor of Lesa Samuels, I believe that reasonable minds can differ as to whether the City of Tacoma's acts constituted negligence or gross negligence. If a finder of fact determined that the City's acts constituted mere negligence, I agree with the majority that the City would have statutory immunity.

We engage in the same inquiry as the trial court and review a summary judgment order de novo. *Woodward v. Lopez*, 174 Wn. App. 460, 467, 300 P.3d 417 (2013). We consider all evidence and all reasonable inferences that arise therefrom in the light most favorable to the nonmoving party. *Woodward*, 174 Wn. App. at 468.

Summary judgment is appropriate "if the pleadings, affidavits, and depositions before the trial court establish that there is no genuine issue of material fact and that as a matter of law the moving party is entitled to judgment." *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). The burden is on the moving party to demonstrate there is no genuine issue of material fact. *Woodward*, 174 Wn. App. at 468. On summary judgment, questions of fact may be determined as a matter of law "'when reasonable minds could reach but one conclusion.'" *Ruff*, 125 Wn.2d at 704 (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

"'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'" *Woodward*, 174 Wn. App. at 468 (internal quotation marks omitted) (quoting *Visser v. Craig*, 139 Wn. App. 152, 158, 159 P.3d 453 (2007)). However, "a nonmoving party 'may not rely on speculation [or on] argumentative assertions that unresolved

factual issues remain.'"  *Woodward*, 174 Wn. App. at 468 (internal quotation marks omitted) (quoting *Visser*, 139 Wn. App. at 158).  "An expert opinion on an ultimate issue of fact is sufficient to preclude summary judgment."  *Woodward*, 174 Wn. App. at 468; *see Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 353, 588 P.2d 1346 (1979).  When a material fact is in dispute, a court must deny summary judgment.  *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485-86, 78 P.3d 1274 (2003).

In the present case, Samuels identifies a number of material facts, both acts and omissions, she claims are in dispute.  I agree with her.  Samuels first asserts that the Tacoma Fire Department emergency medical technicians and paramedics (collectively first responders) did not perform the FAST test properly and did not follow established protocols.  There is a dispute of a material fact as to whether the first responders performed all parts of the FAST test.  Next, Samuels asserts there is a dispute as to whether the first responders rendered a medical opinion that Samuels was not having a stroke.  Because of this opinion, Samuels asserts she did not have the first responders transport her to the hospital.  Lastly, Samuels asserts that there is a factual dispute as to whether the first responders recommended she take a private ambulance to the hospital or have her significant other drive her.[4]  Because these factual disputes are material, I believe the court erred in granting summary judgment.

---

[4] In addition, Samuels alleges that the first responders went outside of their field of expertise by not contacting a base-station (on call) physician, in violation of administrative rules.  She alleges they failed to follow protocol.  Samuels agrees that this issue does not involve a factual dispute.

The majority seems to imply that even if all of these factual disputes are settled in Samuels's favor, that she would only prove negligence, not gross negligence. The majority asserts that reasonable minds could not differ on this issue. I disagree.

First, however, I agree with the majority that if all of the facts show nothing more than mere negligence, that RCW 18.71.210 provides the City with immunity. However, I disagree with the majority's view that reasonable minds could not differ on whether these acts and omissions constitute negligence or gross negligence. I believe that this determination is for a trier of fact.

Ordinary negligence "is the act or omission which a person of ordinary prudence would do or fail to do under like circumstances or conditions; it is that degree of care which the reasonable prudent person would exercise in the same or similar circumstances." *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965) (automobile accident). Gross negligence is "negligence substantially and appreciably greater than ordinary negligence. . . . In determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor." *Nist*, 67 Wn.2d at 331. *Nist* recognized that the application of the terms negligence and gross negligence has not been uniform. "In some instances, negligence, which has been declared insufficient to constitute gross negligence as a matter of law, has been held in similar cases to create an issue of gross negligence" for the trier of fact. *Nist*, 67 Wn.2d at 329.

Additionally, in *Harper v. State*, 192 Wn.2d 328, 341, 429 P.3d 1071 (2018), where the plaintiff sued the Department of Corrections (DOC) for failing to supervise a probationer who killed his girlfriend, the court recognized that normally the issue confronting us is one for the trier of fact, unless reasonable minds could not differ. It affirmed *Nist*'s principles and affirmed that

courts must specifically identify the relevant failure(s) identified by the plaintiff. *Harper*, 192

Wn.2d at 344.

> Following guidance from *Nist*, in ruling on a motion for summary judgment, trial courts must specifically identify the relevant failure alleged by the plaintiff. If the evidence shows that the defendant may have failed to exercise slight care in the specific area that is relevant to the case (e.g., turning into oncoming traffic), then the trial court should not grant summary judgment—even if a defendant exercised great care in other respects (e.g., allowing a car to pass).

*Harper*, 192 Wn.2d at 344.

In so ruling, the court said that a plaintiff must provide substantial evidence of serious

negligence. The court must look at what the defendant did as well as what it failed to do.

> If a review of all the evidence suggests that reasonable minds could differ on whether the defendant may have failed to exercise slight care, then the court must deny the motion for summary judgment. But if a review of all the evidence reveals that the defendant exercised slight care, and reasonable minds could not differ on this point, then the court must grant the motion.

*Harper*, 192 Wn.2d at 346.

In the present case I believe the superior court erred by granting summary judgment. First,

it failed to specifically identify the relevant failure(s) alleged by Samuels. Second, there are

material facts in dispute. Third, even if all the material facts are resolved in the light most favorable

to the City, as the majority seems to say it is doing, I believe reasonable minds could differ on

whether this case involves negligence or gross negligence. This case is qualitatively different from

a car accident case and a DOC failure to supervise case. I would reverse the trial court's granting

of summary judgment.



MELNICK, P.J

20